Joseph G. Sansone
Lindsay S. Moilanen
Cynthia A. Matthews
Elisa S. Solomon
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, New York 10004-2616
(212) 336-0427 (Solomon)
solomonel@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | COMPLAINT |
| Plaintiff, | 26 Civ. 4724 (    ) |
| -against- | |
| GERARD RYAN, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint against

Defendant Gerard Ryan ("Ryan" or "Defendant") alleges as follows:

SUMMARY

1.      This case involves Ryan's unlawful insider trading in the securities of

biopharmaceutical company Kadmon Holdings, Inc. ("Kadmon"), and his illegal tipping of

material non-public information to at least one individual who traded in Kadmon securities.

2.      On the afternoon of July 16, 2021, Kadmon announced that the Food and Drug

Administration ("FDA") had approved Belumosudil, sold under the brand name Rezurock (the

1

"Announcement"). On the day of the Announcement, Kadmon's stock price closed approximately 20 percent higher than the previous day's close.

3.    Two days prior to the Announcement, on the morning of July 14, 2021, the FDA confidentially informed Kadmon (by email) that it planned to approve Rezurock.

4.    Ryan's cousin ("Cousin")—who was then a Kadmon Immune Hematology Manager and part of the sales team working on Kadmon's anticipated marketing roll-out of Rezurock—learned on July 14 that the FDA had confidentially communicated to Kadmon its plan to approve Rezurock.

5.    On the evening of July 14, Ryan learned from Cousin that the FDA planned to approve Rezurock and, armed with that nonpublic information, Ryan began trading Kadmon securities.

6.    On July 15 and July 16, prior to the Announcement, Ryan bought a total of approximately 16,480 Kadmon shares.

7.    Ryan also promptly shared this confidential information with a longtime friend ("Friend"), who likewise purchased Kadmon stock before the Announcement.

8.    As a result of this illicit trading, Ryan earned approximately $9,260 in ill-gotten profits, and Friend earned approximately $1,170 in ill-gotten profits.

## VIOLATIONS

9.    By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

10.    Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of a similar type and object.

2

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

11.     The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) and 21A(a) [15 U.S.C. §§ 78u(d); 78u-1(a)].

12.     The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules he is alleged to have violated in this Complaint; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay prejudgment interest pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)]; and (d) ordering any other and further relief the Court may deem just and proper.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to Exchange Act Sections 21, 21A, and 27 [15 U.S.C. §§ 78u; 78u-1; 78aa].

14.     Defendant, directly and indirectly, has made use of means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

15.     Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. At all relevant times, Kadmon was headquartered in this District, and Kadmon's common stock traded on the NASDAQ Global Select Market Exchange, which is headquartered in New York, New York.

**DEFENDANT**

16.     **Ryan**, age 62, resides in Oxford, Mississippi. He is a retired trader for the New York Mercantile Exchange. On March 26, 2026, Ryan pleaded guilty to criminal charges filed in

3

*United States v. Ryan*, 26-cr-00117-JPC (S.D.N.Y.) (the "Criminal Case"), arising from substantially the same facts alleged herein.

## OTHER RELEVANT INDIVIDUALS AND ENTITY

17.    **Kadmon** was, at all relevant times, a Delaware corporation headquartered in New York, New York, focused on the development of biopharmaceuticals, including immuno-oncology therapies, as well as treatments for immune and fibrotic diseases. Kadmon is now wholly owned by Sanofi, a limited liability company incorporated in France and headquartered in Paris, France. Prior to the closing of Sanofi's acquisition in November 2021, Kadmon's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and listed on the NASDAQ Global Select Market Exchange under the symbol KDMN.

18.    **Cousin** is Ryan's cousin who began working as an Immune Hematology Manager for Kadmon's Commercial Sales Department in March 2021 and who was a part of the Kadmon team focused on the company's anticipated marketing roll-out of Rezurock, following FDA approval.

19.    **Friend** was, at all relevant times, a friend of Ryan's with whom he discussed stocks and shared confidential information concerning Kadmon.

## FACTS

I.    **After Cousin Begins Working at Kadmon, Ryan and Friend Begin Trading Kadmon Stock**

20.    Ryan and Cousin are family members who share a close personal relationship and during the relevant period communicated several times a week, sometimes multiple times a day—via text message, phone calls, and in-person meetings.

21.    Ryan began purchasing Kadmon securities in March 2021, the same month Cousin began working at Kadmon.

22.    Ryan continued to build his Kadmon securities position through June 2021, generally through small (1,000 shares or fewer) stock purchases and "put" and "call" option transactions.

23.    A "call" option gives the holder of the option the right, but not the obligation, to purchase a security at a specified price (the "strike" price) prior to the option expiration date. Generally, the buyer of a call option anticipates that the price of the underlying security will increase prior to expiration. If the price of the underlying security rises above the option strike price before expiration, the holder can purchase the underlying security below its market value and resell the same security for a profit.

24.    A "put" option gives the holder of the option the right, but not the obligation, to sell a security at a specified strike price prior to the expiration date. Generally, the seller of a put option anticipates that the price of the underlying security will remain stable or increase prior to expiration. When a person sells a put option to another trader, they collect a premium. If the price of the underlying security rises above the strike price, the buyer of the option has no incentive to exercise the option against the seller because it would not be economically beneficial to sell the underlying stock at the lower strike price. Under those circumstances, the seller of the put option is able to retain the premium as a profit.

25.    The value of call options and put options rise and fall based on the price movement of the underlying stock and the perceived likelihood that the option can be exercised for a profit prior to expiration.

26.    In the month prior to July 14, 2021, Ryan bought and sold Kadmon stock and purchased Kadmon put options.

27.    Prior to the events described in this Complaint, Ryan and Friend had lived in the same town, been friends for several decades, shared a group of friends, and went on trips together.

28.    Ryan was known to Friend and their mutual friends as the "stock guy," and he provided Friend with stock tips.

29.    Like Ryan, Friend began trading in Kadmon stock in March 2021, the same month Cousin began working at Kadmon.

30.    From March 2021 through June 14, 2021, Friend established a small position in Kadmon securities, buying a total of fewer than 1,000 shares of Kadmon stock across three trading dates.

31.    From June 14 until July 16, 2021, Friend made no additional purchases of Kadmon securities.

**II.    Kadmon Receives Nonpublic, Confidential Information that the Food and Drug Administration Plans to Approve Rezurock**

32.    As of late spring of 2021, Kadmon had a New Drug Application for Rezurock under review by the FDA.

33.    Based on prior communications with the FDA, Kadmon had not anticipated receiving a decision from the FDA regarding the Rezurock application until August 2021.

34.    However, on July 14, 2021, at 8:47 a.m., the FDA sent an email to two Kadmon Regulatory Affairs officers enclosing the FDA's proposed approval of Rezurock ("July 14 Email").

35.    That morning, one of the Regulatory Officers forwarded the July 14 Email to several Kadmon principals, copying Kadmon's Chief Commercial Officer, who oversaw Kadmon's Commercial Sales Department.

36.     Over the next two days, between July 14 and July 16, 2021, members of Kadmon's Commercial Sales Department participated in several internal meetings and communicated about the imminent announcement of the FDA's Rezurock approval.

37.     Cousin, who was a member of the East Sales Team in Kadmon's Commercial Sales Department, corresponded by email and text message with other members of Kadmon's Commercial Sales Department during the period between July 14 and July 16.

38.     At all relevant times prior to the Announcement, Kadmon took steps to maintain the confidentiality of information concerning the FDA's intent to approve Rezurock.

39.     On June 23, 2021, several weeks prior to Kadmon receiving the July 14 Email, Kadmon's Chief Compliance Officer sent an email reminding all Kadmon employees (including Cousin) about compliance with the company's written insider trading policy ("Insider Trading Policy"), noting that the company's ongoing engagement with the FDA about Rezurock was "HIGHLY CONFIDENTIAL" and that "discussion about [those] activities should be limited only to within Kadmon."

40.     Kadmon's Insider Trading Policy prohibited all Kadmon employees from, among other things, trading on or tipping material nonpublic information.

41.     The Insider Trading Policy defined material information to include "results of or significant changes or developments in products or product lines" and instructed that information "is considered nonpublic if it has not been disseminated in a manner making it available to investors generally."

42.     Kadmon's Employee Handbook, distributed to all Kadmon employees, also expressly prohibited its employees from disclosing "non-public, proprietary and/or confidential

information relating to, among other things, Kadmon's business, research [and] clinical development."

43. Upon beginning her employment with Kadmon, Cousin signed Kadmon's Employee Confidentiality and Inventions Assignment Agreement ("Employee Confidentiality Agreement").

44. Under the Employee Confidentiality Agreement, Cousin agreed not to "disclose, publish, use, transfer, or otherwise disseminate to anyone . . . Confidential Information[,]" defined as "any and all non-public, proprietary or other confidential information of Kadmon disclosed to me, to which I have access, or of which I otherwise become aware[.]"

### III. Ryan Obtains Information About Rezurock, Trades Kadmon Securities, and Tips Friend

45. As an employee of Kadmon, Cousin was subject to Kadmon's policies and procedures described in paragraphs 39-44 above.

46. Despite Cousin's obligations to maintain the confidentiality of information concerning the FDA's Rezurock approval, Cousin shared this information with Ryan before that information became public in the July 16 Announcement.

47. Following the July 14 Email from the FDA and before the Announcement, Ryan and Cousin spoke by phone for two minutes at 7:29 p.m. on July 14, 2021.

48. The next morning, on July 15, 2021, Ryan purchased over 3,400 Kadmon shares at prices ranging from $3.57 to $3.65 per share, and sold a Kadmon put option contract expiring in September 2021 with a strike price of $5 per share, a price that was significantly higher than Kadmon's per share stock price, which traded between approximately $3.50 and $3.70 on that day.

8

49.    At 5:58 p.m. on July 15, Ryan and Cousin spoke by phone for nine minutes (the "July 15 Call").

50.    Within ten minutes of the July 15 Call, and continuing throughout that evening, Ryan placed a series of orders for Kadmon stock, buying a total of approximately 11,100 shares at prices ranging from $3.65 to $3.76 per share.

51.    Shortly after the July 15 Call, Ryan also began communicating with Friend.

52.    Ryan sent the following text message to Friend at around 6:20 p.m. on July 15, 2021:

> Ryan:    Bid 6% higher now
>
> $3.74 bid
>
> 6% higher
>
> Friend: Ok cool
>
> What do u think
>
> Ryan:    Hmmm 🤔
>
> Friend:  By August 10
>
> Ryan:    Very soon
>
> Friend:  Ok cool
>
> How you doing
>
> Did u bu[y] more

53.    Shortly thereafter, Ryan responded to Friend's text, by sharing a screenshot showing trading Kadmon stock market activity as of 6:14 p.m. on July 15, 2021, and another screenshot showing Ryan's pending bid to purchase Kadmon stock.

54.    At 6:30 p.m. on July 15, 2021, Ryan and Friend spoke by phone and, at 10:35 p.m. that same evening, Ryan texted Friend attaching a screenshot of a social media post from a

third-party stating that Kadmon stock "is being shorted" but "if there's [FDA] approval (and there's a good chance of that) shorts will have to run for the hills and the price will fly…10 at least, maybe 12."

55.     At 9:53 a.m. the next morning, July 16, 2021, soon after a meeting of the East Sales Team, Ryan and Cousin again spoke by phone for three minutes (the "July 16 Call").

56.     On the morning of July 16, 2021, prior to the Announcement that afternoon, Ryan continued trading Kadmon securities, buying 1,948 shares at prices of approximately $3.77 to $3.85 per share.

57.     Following the July 16 Call, Ryan also sold Kadmon put options and bought Kadmon call options, both expiring in September 2021 with a strike price of $5 per share, significantly higher than Kadmon's per share stock price, which traded between approximately $3.70 and $3.90 on that day.

58.     Several minutes after the July 16 Call, Ryan texted Friend a screenshot of a stock chart showing changes in Kadmon's stock price.

59.     In sharing Kadmon's confidential information with Friend, Ryan intended for Friend to trade on his pre-Announcement Kadmon tips, and Ryan knew or recklessly disregarded that Friend would do so.

60.     At approximately 11:30 a.m. on July 16, Friend bought 2,250 shares of Kadmon stock at $3.76 per share, his largest purchase of Kadmon stock, more than doubling his position.

61.     Between noon and 1:30 p.m. on July 16, 2021, Ryan and Friend exchanged the following text messages:

> Ryan:     KDMN…My prediction…$16.69…Today 🙏
>
> Friend: wow…Hopefully…What time is the news

10

Friend: Any word?

Ryan:

62.    In total, between July 15 and July 16, 2021, prior to the Announcement, Ryan bought approximately 16,480 shares of Kadmon common stock while also selling Kadmon put options and buying Kadmon call options

63.    Ryan admitted at his plea allocution in the Criminal Case ("Allocution"), that prior to the Announcement, (a) Cousin disclosed to Ryan confidential Kadmon information that Cousin was not permitted to disclose; and (b) Ryan understood at the time that Cousin was not permitted to disclose that information to him.

64.    Ryan also admitted at his Allocution that he in fact used the confidential information he obtained from Cousin to trade in Kadmon securities.

## IV.    Post-Announcement July 16 Communications

65.    On July 16, 2021, at approximately 1:30 p.m., the FDA sent a letter to Kadmon approving Rezurock.

66.    At approximately 2:20 p.m. on July 16, 2021, Kadmon issued the Announcement that the FDA had approved Rezurock.

67.    A few minutes after the Announcement, beginning at 2:24 p.m., Ryan and Cousin spoke again for a total of three minutes.

68.    Shortly after Ryan's call with Cousin, he texted Friend sharing a copy of the Announcement.

69.    Ryan spoke to Cousin again at around 3:00 p.m. on July 16, 2021, and continued to call or receive calls from Cousin during the course of that day.

70. Throughout the course of July 16, 2021, Ryan and Friend also continued to exchange phone calls and text messages concerning the price of Kadmon stock and timing for selling their Kadmon positions in response to changes in Kadmon's share price.

71. At 4:50 p.m. on July 16, Ryan wrote to Friend stating, "I'd be happy with $5 KDMN at this point" and noting "I thought we'd be selling at $12.66."

72. In the same July 16 text message exchange, Ryan and Friend speculated that the Kadmon stock price would rise on the next trading day, Monday, July 19, to which Friend responded, "I do think so with that news it should nothing but up."

## V.    The Announcement's Market Impact and Ryan's and Friend's Trading Profits

73. On July 16, Kadmon's stock price closed at $4.28 per share, rising by approximately 20 percent from the previous day's close of $3.55 per share.

74. Based on the July 16 closing price for Kadmon stock, Ryan profited approximately $9,260 from his July 15 and 16 trading in Kadmon stock and options.

75. Based on the July 16 closing price for Kadmon stock, Friend profited approximately $1,170 from his July 16 trading in Kadmon stock.

76. Between August and November 2021, Ryan ultimately sold his Kadmon position, including the remaining shares he had acquired on July 15 and 16.

77. In November 2021, Friend sold his Kadmon position, including the shares he had acquired on July 16.

### CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

78. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 78, as if they were fully set forth herein.

79.     By engaging in the conduct described above, Defendant, directly or indirectly, has made use of means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein, and knowingly or recklessly has:

a.  employed one or more devices, schemes, or artifices to defraud,

b.  made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or

c.  engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

80.     By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering Defendant to disgorge all ill-gotten gains he received as a result of the alleged violations with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

## III.

Ordering Defendant to pay civil monetary penalties pursuant to Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)];

## IV.

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated:  June 4, 2026
New York, New York

/s/ Elisa S. Solomon
Joseph G. Sansone
Lindsay S. Moilanen
Cynthia A. Matthews
Elisa S. Solomon
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0427 (Solomon)
SolomonEl@sec.gov